1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

SHEIDA HUKMAN,

     Plaintiff

v.

TERRIBLE HERBST INC.,

     Defendant

Case No.: 2:21-cv-01279-APG-VCF

**Order Granting in Part Motion to Dismiss**

[ECF No. 6]

Plaintiff Sheida Hukman is suing her former employer, Terrible Herbst Inc. (Terrible), for various forms of employment discrimination and denial of employment rights and benefits. Terrible moves to dismiss, arguing Hukman does not allege sufficient facts for some of her claims, and other claims are preempted, untimely, or otherwise not viable.  Hukman responds that she has sufficiently stated her claims.  I grant Terrible's motion to dismiss in part because some of Hukman's claims are insufficiently pleaded.  I grant Hukman leave to amend her complaint as outlined below.

## I. BACKGROUND[1]

1. Denial of Benefits and Promotion

Hukman is of middle eastern, Iraqi, and Kurdish descent. ECF No. 1-3 at 5.  She began working for Terrible in October 2017 as a cashier. *Id.* at 4.  She was Terrible's only Kurdish employee. *Id.* at 5.  Hukman worked the graveyard shift. *Id.* at 7.  When she was hired, she was told there was opportunity for promotion within Terrible. *Id.* at 4.  But she was not told about or offered a 401K plan despite other, non-Kurdish and non-Iraqi, employees being informed of a

---

[1] The allegations in this section are taken from Hukman's complaint. ECF No. 1-3.  By re-stating them here, I do not certify them as true.

401K plan when they were hired. *Id.* at 5.  Despite speaking Spanish fluently, she was not offered premium pay for speaking Spanish, while other employees were. *Id.* at 5.  When she complained about this issue, Terrible denied paying other employees premium pay for speaking Spanish. *Id.*  She was a good employee who reported to work on time, had good attendance, completed her duties accurately, and provided excellent customer service. *Id.* at 5.

In March 2019, Hukman was denied a promotion to assistant manager. *Id.* at 6.  Terrible instead hired a non-Kurdish, non-Iraqi person who did not have any experience as a supervisor or as a clerk and had been disciplined before. *Id.*  Hukman was more experienced and better qualified. *Id.*  Terrible ignored her complaint on this matter. *Id.*  Hukman's allegations on this issue are a bit confusing as she identifies an individual hired into the position, but also seems to allege that the position remained open following her denial and that Terrible sought applicants outside of Hukman's protected class. *Id.*

In September 2019, Hukman was again denied a promotion to assistant store manager. *Id.* The person hired was non-Kurdish and non-Iraqi and did not have experience as a supervisor or as a cashier. *Id.*  Terrible again ignored her complaint on this matter. *Id.*

Also in September 2019, another employee told Hukman that he was hired to replace her. *Id.*  Hukman approached the store manager about this, and the store manager denied hiring a replacement. *Id.*

In October 2019, another assistant manager position became available but Hukman was again denied promotion to this role. *Id.* at 6-7.  The person hired was non-Kurdish and non-Iraqi, did not have Hukman's experience or qualifications, and was not previously working for Terrible. *Id.*  Terrible did not respond to Hukman's complaint on this matter. *Id.* at 7.

1    Hukman's store manager made unfavorable comments about her potential for promotion.

2    *Id.*  She was treated differently than other employees because of her accent and national origin.

3    *Id.*  All other cashiers, and employees outside of her protected class, took lunch and rest breaks

4    but she was never told to take them. *Id.*

5        In November 2019, Hukman complained about the 401K issue, the lunch and rest breaks

6    issue, and her being denied promotions. *Id.*  When she directed her issues to the human resources

7    director, Terrible refused to resolve the issue and Hukman was told not to take lunch or breaks.

8    *Id.* at 7.  Terrible refused to pay her for her lunch break, but it is not clear from the complaint

9    whether this refers to a break Hukman actually took or not. *Id.*  The director spoke in a

10   disrespectful manner and asked Hukman to leave the meeting. *Id.* at 8.

11       The human resources manager asked Hukman to request a transfer, which she did while

12   also requesting a promotion. *Id.*  On January 31, 2020, she had an interview with a district

13   manager for her promotion. *Id.*  According to the complaint, no other manager[2] who requested a

14   transfer and was already working for Terrible was interviewed by a district manager. *Id.*  Human

15   resources informed Hukman that she was not qualified for the position. *Id.*  Terrible refused to

16   discuss why she was not qualified, which was contrary to Terrible's policy. *Id.*  When she

17   complained of being denied the promotion due to her national origin, Terrible immediately

18   suspended her. *Id.*

19       Hukman's store manager was involved in her promotion denials because he did not want

20   her to be promoted due to her accent and national origin. *Id.* at 12-13.  The store manager refused

21   to train her to be a supervisor or manager, while he trained other promoted employees. *Id.* at 13.

22   / / / /

23

---

[2] It is not clear whether Hukman was a manager at this time. *Id.* at 8.

2. <u>Harassment</u>

During this time, assistant manager Michael Turner harassed and discriminated against Hukman and believed she was a terrorist because of her national origin. *Id.* at 9.  Turner "[gave] her a hard time" and assigned her duties she was not responsible for. *Id.*

On one day in December 2019, Turner arrived at work at 5:30 a.m. and was mad, rude, and nasty. *Id.*  Turner yelled at Hukman and spoke to her in a rude manner. *Id.*  Turner asked her why the bathroom was not clean, even though it was not her duty to clean the bathroom. *Id.* Turner had never checked the bathroom, which was clean. *Id.* at 9-10.

In January 2020, Turner yelled at Hukman and falsely accused her of not making money drops.[3] *Id.* at 10.  Hukman asked Turner to count the money, which he did, and she was not short. *Id.*

That same month, Turner claimed Terrible's director instituted a policy to keep the grill open until 2:00 a.m. such that the employee working the swing shift would not clean the grill. *Id.* But Hukman never received an email about this policy change. *Id.*  Hukman contacted other stores and confirmed no such policy existed, so the swing shift employee was responsible for cleaning the grill at 9:00 p.m. *Id.*

In February 2020, Turner told employees a district manager instituted a new policy that employees were no longer allowed to receive a car wash, but Hukman did not receive any other notice of this policy. *Id.*

One day that same month, Hukman began to feel ill because she smelled something bad while seated at the register. *Id.*  Turner yelled at her when she moved to a different area to feel

---

[3] The complaint does not explain what a money drop is in this context.

1  better. *Id.*  Hukman believes Turner was attempting to poison her. *Id.* at 10-11.  She also alleges

2  she found Turner's poison "in the Frappe," presumably at Terrible. *Id.* at 11.

3       Hukman complained about Turner later that month, and Turner began making up policies

4  and procedures to assign Hukman extra work during her shift. *Id.*  The store manager knew the

5  policies were non-existent but did not correct Turner. *Id.*  Human resources did not investigate or

6  address Turner regarding his harassment or use of poison, and did not respond to her complaint.

7  *Id.*

8       3.   <u>March 17, 2020 and Termination</u>

9       The store manager told Turner not to report to work until Hukman left, but on March 17,

10  2020, Turner arrived an hour before she left and approached her in an intimidating manner. *Id.* at

11  12.  On that day, Turner asked a customer to harass Hukman. *Id.*  Hukman's complaint is not

12  clear, but it seems that Hukman used a key to unlock a cabinet to retrieve her backpack to leave,

13  and then Turner demanded the key. *Id.*  Turner called her a terrorist. *Id.*  It is not clear whether

14  Hukman or someone else dropped the key, but it seems that there was an issue arising out of the

15  key being dropped. *Id.*  It is not clear from the complaint what the exact issue was surrounding

16  the key.  Turner then blocked Hukman from the bathroom. *Id.*  She called the police. *Id.*  She

17  seems to allege the police investigated, but she was not there when they spoke to Turner. *Id.*  She

18  seems to allege that the store manager wrote a false statement regarding the key and the

19  circumstances under which Hukman left the store. *Id.*  The FBI arrested Turner in March 2020.[4]

20  *Id.* at 13.

21

22

23

---

[4] It is unclear why Turner was arrested.  Hukman alleges Turner was receiving money drops, but does not explain what this means, whether it is illegal, or whether it was the basis for his arrest. ECF No. 1-3 at 11.

That same day, Hukman wrote another letter about her promotion denial. *Id.* at 13.  The letter stated that although Terrible claimed she was not qualified for the position, others who were promoted to the store manager position did not have a college degree (like she did) or experience, and were outside her protected class. *Id.*  Immediately thereafter, the human resources director sent her an email suspending her employment pending an investigation. *Id.*

Terrible offered Hukman a separation on March 23, 2020. *Id.* at 14.  Hukman characterizes this offer as forcing her to quit or be transferred, and she alleges she was forced to leave Terrible. *Id.*  Hukman seems to allege that she was told that remaining with Terrible was not a good idea because she frequently complained. *Id.* at 14, 18.

4.  Unemployment

Hukman later filed for unemployment benefits. *Id.*  Terrible employees wrote false statements, and she was denied benefits because Terrible claimed Hukman used the unemployment money to donate to terrorist groups. *Id.*  Terrible contacted unemployment personnel, the referee in her case, and the district court hearing her appeal, to make these claims. *Id.* at 19.[5]

5.  Claims

Hukman brings nine causes of action against Terrible:

(1) National origin discrimination in violation of Title VII;

---

[5] Hukman asserts additional factual allegations in her response to the motion. *E.g.*, ECF No. 18 at 29 (Turner constantly wrote her up for insubordination or for no reason); 30 (Turner arrived at the workplace in the middle of the night in March 2020); 31 (Hukman was asked during her promotion interview if she was middle-eastern); 33 (Terrible ignored her February 2020 request to transfer).  I look only to the four corners of a complaint when considering a motion to dismiss, so I do not consider these additional factual allegations. *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).  Hukman may incorporate these additional facts in her amended complaint should she see fit to do so.

(2) Retaliation in violation of Title VII;

(3) Failure to promote her to a supervisor in violation of Title VII;

(4) Failure to promote her to a store manager in violation of Title VII;

(5) Harassment in violation of Title VII;

(6) Denial of benefits, such as 401K payment and Spanish premium pay;

(7) Denial of meal and rest breaks, and denial of payment during these periods;

(8) Constructive termination; and

(9) Interference with unemployment benefits.

ECF No. 1-3 at 3-4.  Terrible moves to dismiss all claims except the retaliation claim. ECF No. 6.

## II. ANALYSIS

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for failure to state a claim upon which relief can be granted.  A properly pleaded complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Although Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

I apply a two-step approach when considering motions to dismiss. *Id.* at 679.  First, I accept as true all well-pleaded factual allegations and draw all reasonable inferences from the complaint in the plaintiffs' favor. *Id.*; *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247-48 (9th Cir. 2013).  Legal conclusions, however, are not entitled to the same assumption of truth even if cast in the form of factual allegations. *Iqbal*, 556 U.S. at 679; *Brown*, 724 F.3d at 1248.  Mere recitals

of the elements of a cause of action, supported only by conclusory statements, do not suffice to form a properly pleaded complaint. *Iqbal*, 556 U.S. at 678.  Second, I consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679.  A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678.  Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (simplified).  When the claims have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the [district] court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  Complaints by pro se litigants should be construed liberally and are held to less stringent standards than formal pleadings drafted by lawyers, but they must still comply with the rules of procedure. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995).

Federal Rule of Civil Procedure 15(a)(2) provides that courts "should freely give leave [to amend] when justice so requires."  "This policy is to be applied with extreme liberality." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quotation omitted).  Leave to amend generally should be granted unless amendment would be futile. *See Lopez v. Smith*, 203 F.3d 1122, 1128 (9th Cir. 2000) (en banc).

1.  <u>National Origin Discrimination (Claim 1)</u>

Terrible argues that Hukman has not stated a claim for national origin discrimination with respect to her termination because she has not alleged similarly situated individuals outside her protected group were treated more favorably under similar circumstances.  Terrible contends that

1 Hukman has alleged only that she is in a protected class and she was terminated, but these

2 allegations do not suffice to cross the line from conceivable to plausible.

3       Hukman responds that she established her discrimination claim because she is Kurdish

4 and Iraqi and was constructively discharged. She lists the following adverse employment actions

5 that she suffered: (1) she was assigned more duties than others in her same job; (2) she was not

6 given lunch or rest breaks while other employees were; (3) she was denied benefits such as car

7 washes; (4) she was denied promotions; and (5) she was suspended when she complained. She

8 contends she met all of Terrible's legitimate expectations and similarly situated employees not in

9 her protected class were treated better than her. Hukman contends that Terrible's shifting

10 reasons for its decision to terminate her demonstrates pretext.

11       Title VII prohibits an employer from "discriminat[ing] against any individual . . . because

12 of such individual's . . . race . . . or national origin." 42 U.S.C. § 2000e-2(a)(1). In a Title VII

13 case, the plaintiff bears the initial burden of proving a prima facie case of discrimination. *Hawn*

14 *v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1155 (9th Cir. 2010). A plaintiff may establish a prima

15 facie case by showing: (1) she is a member of a protected class; (2) she was qualified for her

16 position and performing her job satisfactorily; (3) she experienced an adverse employment

17 action; and (4) similarly situated individuals outside her protected class were treated more

18 favorably, or other circumstances surrounding the adverse employment action give rise to an

19 inference of discrimination. *Id.* at 1156. The plaintiff may prove discriminatory intent through

20 direct or circumstantial evidence. *Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185,

21 1194 (9th Cir. 2003). Discriminatory intent can be shown, for example, by "showing that the

22 employer's proffered explanation is unworthy of credence because it is internally inconsistent or

23 otherwise not believable." *Id.* (quotation omitted). Terrible challenges only the third element of

1  Hukman's claim, arguing that she has not alleged similarly situated individuals were treated

2  more favorably under similar circumstances.

3          a.   *Assigned More Duties Than Others in the Same Job*

4          Hukman has not sufficiently stated her claim that she was assigned more than others

5  because it is not clear whether she is alleging that other employees were not assigned duties

6  outside of their stated job duties, and she has not alleged facts that plausibly identify any

7  similarly situated individuals who were not assigned additional job duties.  Consequently, I grant

8  Terrible's motion to dismiss Hukman's first cause of action based on this adverse employment

9  action.  However, Hukman may amend her complaint to clarify her allegation with regard to this

10  adverse employment action, should facts exist to do so.

11          b.   *Denied Meal and Rest Breaks*

12          Hukman alleges that she was the only Kurdish person working for Terrible and that all

13  other Terrible cashiers were provided with meal and rest breaks. ECF No. 1-3 at 5, 7.  She has

14  therefore alleged that similarly situated individuals outside her protected group were treated

15  more favorably than her regarding being denied meal and rest breaks.  I deny Terrible's motion

16  to dismiss Hukman's first cause of action based on this alleged adverse employment action.

17          c.   *Denied Car Washes*

18          Hukman contends that all employees were denied car washes, not just her. *Id.* at 10.  She

19  therefore has not alleged that she was discriminated against regarding this action.  I grant

20  Terrible's motion to dismiss Hukman's first cause of action based on this adverse employment

21  action, but Hukman may amend her complaint to identify similarly situated individuals who were

22  not denied carwashes, should facts exist to do so.

23  / / / /

1

       d.  *Denied Promotions*

2

      Hukman alleges that she was denied a promotion four times.  For the first three instances,

3

she identifies the individuals outside of her protected class who were hired instead of her. *Id.* at

4

6-7.  She has therefore alleged that similarly situated individuals outside her protected group

5

were treated more favorably than her, and I deny Terrible's motion to dismiss Hukman's first

6

cause of action with regard to Hukman's denied promotions in March, September, and October

7

2019.

8

      However, Hukman does not identify a similarly situated individual who was treated more

9

favorably than her for the fourth time she was allegedly denied a promotion.  Hukman does not

10

state whether someone else filled the position, just that she was not hired.  Hukman has not

11

alleged facts that give rise to an inference of discrimination.  She alleges that she did well in her

12

promotion interview, and states in a conclusory fashion that she was denied the promotion due to

13

her national origin. *Id.* at 9.  Hukman attaches exhibits to her response brief that allege that

14

during her promotion interview the human resources district manager asked her if she was

15

middle-eastern, she responded yes, and then the manager said there was no position available.

16

ECF No. 18-1 at 25.  But Hukman did not include these facts in her complaint so I cannot

17

consider them. *Outdoor Media Grp. v. City of Beaumont*, 506 F.3d 895, 899 (9th Cir. 2007).   I

18

grant Terrible's motion to dismiss Hukman's first cause of action based on her fourth denied

19

promotion, but Hukman may amend her complaint to allege additional facts to sufficiently state

20

her claim as it relates to this adverse employment action, should facts exist to do so.

21

      e.  *Suspended After Complaining*

22

      Hukman has not sufficiently stated this claim because she has not identified any similarly

23

situated individual who also complained under similar circumstances but was not suspended.  I

1  grant Terrible's motion to dismiss Hukman's first cause of action based on her being suspended

2  after complaining, but Hukman may amend her complaint to identify similarly situated

3  individuals who complained under similar circumstances and were not suspended, should facts

4  exist to do so.

5         f.  *Termination*

6        Hukman also seems to allege that she was terminated or constructively discharged due to

7  her national origin.  This claim has not crossed the line from conceivable to plausible because

8  Hukman only speculates that she was terminated due to her national origin.  She claims Turner

9  called her a terrorist, but this statement alone does not give rise to an inference that her

10  termination was for discriminatory reasons because she claims she was "forced to quit" by

11  human resources personnel, not Turner.[6] ECF No. 1-3 at 14.  Hukman argues that Terrible's

12  shifting reasons for her termination demonstrate pretext, but her complaint does not allege that

13  Terrible provided the reasons for her termination that her response identifies.  For example,

14  Hukman contends Terrible used the key incident to argue that Hukman violated Terrible's

15  company policy, but Hukman's complaint does not allege Terrible did so.  Hukman's complaint

16  seems to allege that human resources told her she was suspended due to her complaint against

17  Turner in February 2020. *Id.* at 13.  Later, the complaint alleges Hukman was suspended "for no

18  reason." *Id.* at 14.  The complaint does not state that Terrible proffered the reasons for her

19  termination that Hukman's response identifies, and it does not show that Terrible's reasons for

20  her termination were internally inconsistent.  From the facts alleged, the complaint does not state

21  a claim that Hukman was terminated due to her national origin.  I grant Terrible's motion to

22

23
_____

[6] Hukman does not specify who contacted her on March 23, 2020 to allegedly force her to accept her termination.

1  dismiss Hukman's claim based on this adverse employment action, but Hukman may amend her

2  complaint to state a plausible claim that discriminatory intent motivated Terrible to terminate

3  her, should facts exist to do so.

4      2.  Failure to Promote (Claims 3 & 4)

5      Terrible argues that I should dismiss Hukman's failure-to-promote claims because she

6  did not timely file a charge of discrimination alleging this and therefore failed to exhaust her

7  administrative remedies.

8      Hukman's third and fourth causes of action (that Terrible failed to promote her due to her

9  national origin) seem duplicative of her first cause of action for national origin discrimination,

10  which alleges that she suffered the adverse employment action of being denied promotions.  I

11  therefore grant Terrible's motion to dismiss Hukman's third and fourth causes of action as

12  duplicative.  Hukman may amend her complaint to assert an independent cause of action based

13  on Terrible's alleged failure to promote her, should facts and legal theories exist to do so.

14  Hukman should also be aware that to prevail on her national origin discrimination claim for

15  failure to promote, she will need to rebut Terrible's allegation that she failed to exhaust her

16  administrative remedies and that her charge of discrimination is untimely.

17      3.  Harassment (Claim 5)

18      Terrible argues that Hukman has not sufficiently alleged that she was subjected to

19  harassment because of her national origin.  Terrible contends Hukman merely speculates that

20  Turner thought she was a terrorist because of her national origin.  Terrible further argues that

21  Hukman does not allege conduct severe or pervasive enough to alter the terms and conditions of

22  her employment, or a pattern of ongoing and persistent harassment.

23

Hukman responds that Turner harassed her because he thought she was a terrorist based on her national origin. She argues Turner's conduct was so severe to the point that Turner poisoned Hukman, threatening her life. She alleges she informed Terrible about Turner's harassment on several occasions, but Terrible did not address it.

To state a hostile-work environment claim, Hukman must allege that "(1) [she] was subjected to verbal or physical conduct because of [her national origin], (2) the conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive work environment." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir. 2008) (quotation omitted). In considering whether the discriminatory conduct was "severe or pervasive," I look to "all the circumstances, including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance.'" *Id.* (quotation omitted).

Accepting as true all well-pleaded factual allegations, construing the complaint liberally, and drawing all reasonable inferences from the complaint in Hukman's favor, Hukman has stated a plausible claim of harassment based on Turner's treatment of her. She alleges that Turner called her a terrorist, harassed her over a four-month period, yelled at her, blocked her from using the bathroom, intimidated her, falsely accused her of failing to make money drops, and attempted to poison. Hukman has stated a sufficient claim of harassment at this stage. I deny Terrible's motion to dismiss Hukman's fifth cause of action.

4. Denial of 401K and Spanish Premium Pay Benefits (Claim 6)

Terrible argues that the Employee Retirement Income Security Act of 1974 (ERISA) preempts this claim because a 401K plan is a defined contribution plan that falls under ERISA.

1  Terrible further argues that Hukman does not allege that she was eligible for Spanish premium

2  pay.  Hukman responds by trying to assert an Equal Pay Act claim and argues that male

3  employees were paid higher Spanish premium pay and hourly pay than female employees.

4  Hukman alleges that she was not told about a 401K plan because Terrible discriminates against

5  employees.

6       I construe Hukman's sixth cause of action as bringing a Title VII discrimination claim

7  based on being denied 401K and Spanish premium pay benefits because of her national origin.

8  Hukman alleges that she was not offered the 401K plan when she was hired, while non-Kurdish

9  employees were informed about the 401K plan when they were hired. ECF No. 1-3 at 5.  She

10  alleges that she was not offered Spanish premium pay despite speaking Spanish fluently while

11  non-Kurdish employees were offered Spanish premium pay. *Id.*  She therefore has adequately

12  alleged a national origin discrimination claim under Title VII.

13       Terrible has not demonstrated that Hukman's claim based on the 401K plan is preempted

14  by ERISA because the cases Terrible relies on do not address whether ERISA preempts such a

15  claim.[7]  Several of Terrible's cited cases confirm that ERISA preempts state common law

16

17

_____

18  [7] *See LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248 (2008) (holding that participant in ERISA-regulated 401K plan administered by former employer had cognizable claim under

19  ERISA provision authorizing suits to enforce fiduciary obligations); *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (ERISA preempts claims brought to "remedy only the denial of

20  benefits under ERISA-regulated benefit plans"); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 43 (1987) (ERISA preempts state common law tort and contract actions asserting improper

21  processing of a claim for benefits under insured employee benefit plan); *Nelson v. Wick Bldg. Sys., Inc.*, No. 87–3556, 1988 WL 57977, at *1 (9th Cir. 1988) (affirming district court finding

22  that ERISA preempted Montana state law claims based on employer's refusal to pay employee's medical expenses and failing to disclose facts related to ERISA-governed medical insurance

23  plan); *Chubiz v. Vanguard Grp. Inc.*, No. 2:10-CV-00987-KJD, 2011 WL 705397, at *2 (D. Nev. Feb. 18, 2011) (ERISA preempted claim for breach of fiduciary duty, claim for constructive trust, and claim for declaratory relief).

1  claims, but I do not construe Hukman's claim as a common law claim.  I therefore deny

2  Terrible's motion to dismiss Hukman's sixth cause of action.

3      Hukman raises Equal Pay Act allegations for the first time in her response to Terrible's

4  motion to dismiss.  Her complaint does not allege that Terrible discriminated against her based

5  on her gender.  I do not consider these claims. *Swartz*, 476 F.3d at 763.  Because I am providing

6  Hukman leave to amend, she may amend her complaint to add such a claim, should facts exist to

7  do so.

8      5.  Denial of Meal and Rest Breaks (Claim 7)

9      Terrible argues there is no private right of action to enforce Nevada's labor law provision

10 requiring an employer to provide meal and rest breaks.  Terrible also contends that Hukman

11 failed to sufficiently allege when she was denied these breaks or that she even worked enough

12 hours to be eligible for breaks.  Hukman responds that employees who are denied a lunch beak

13 may sue their employers for unpaid wages.  She alleges she was not provided the meal and rest

14 breaks she qualified for under Nevada law, citing to Nevada law, federal law, and Terrible's

15 handbook on meal and rest breaks.

16     Nevada Revised Statutes (NRS) § 608.019 provides that employers must provide

17 employees certain meal and rest breaks. Nev. Rev. Stat. § 608.019(1), (2).  There is no private

18 right of action to enforce NRS § 608.019. *Busk v. Integrity Staffing Sols.*, 713 F.3d 525, 533 (9th

19 Cir. 2013), rev'd on other grounds, 574 US 27 (2014).  However, NRS Chapter 608 provides a

20 private right of action to recoup unpaid wages. *Neville v. Eighth Jud. Dist. Ct. in and for Clark*,

21 406 P.3d 499 (Nev. 2017) (finding NRS Chapter 608 provides private right of action for unpaid

22 wages such that plaintiff could bring claims under §§ 608.016, 608.018, and 608.020 through

23 608.050); s*ee also Busk*, 713 F.3d at 533 (recognizing that NRS § 608.140 provides a private

right of action to recoup unpaid wages, so the district court correctly focused on whether plaintiffs alleged they were required to work during their lunch periods); *Busk v. Integrity Staffing Sols.*, No. 2:10–cv–01854–RLH-NJK, 2011 WL 2971265 at *7 (finding plaintiffs correctly used NRS § 608.140 as the private right of action to recoup unpaid wages under § 608.019).

Hukman has no private right of action to sue Terrible under § 608.019.  I therefore grant Terrible's motion to dismiss Hukman's seventh cause of action to the extent it seeks to enforce NRS § 608.019.  But it is not clear whether Hukman is seeking to recoup unpaid wages for missed meal and rest breaks, or whether she seeks to do so under state or federal law. *Compare* ECF No. 1-3 at 14 (Hukman alleges she was told that she was not going to get paid for lunch or be able to take lunch) *and* 18 (seventh cause of action stating she was not advised to take breaks, she complained of missed breaks, and Terrible's failure to resolve this issue caused economic loss) *with* 20 (claim for relief does not include lost wages).  Hukman also has not alleged that she was eligible for these breaks or when she was denied these breaks.  In order to avoid misconstruing her complaint, I will allow Hukman to amend her complaint to sufficiently plead a claim for unpaid wages, should facts exist to do so.

### 6.  Constructive Termination (Claim 8)

Terrible argues that Hukman's eighth cause of action is duplicative of her second cause of action for retaliation, because Hukman alleges that she was forced to resign or quit based on Terrible's alleged retaliatory acts.  Terrible contends that to the extent Hukman is alleging a tortious constructive discharge claim, she does not raise a Nevada public policy violation, and does not demonstrate a reasonable person would have resigned under similar circumstances or that Terrible could have remedied any intolerable action.

1    Hukman responds that she may pursue a wrongful termination claim even if she resigned,

2  because the harassment and discrimination created such intolerable working conditions that

3  Terrible forced her to quit.  She contends the working conditions were objectively intolerable

4  and Terrible's conduct was especially egregious because Turner poisoned her.  She argues that

5  Terrible knew about but did not address the discrimination, harassment, and retaliation that she

6  experienced.

7    A constructive discharge under Title VII occurs "when a person quits [her] job under

8  circumstances in which a reasonable person would feel that the conditions of employment have

9  become intolerable." *Lawson v. Wash.*, 296 F. 3d 799, 805 (9th Cir. 2002).  A plaintiff must

10  allege such "intolerable and discriminatory working conditions" that when "looking at the

11  totality of circumstances, a reasonable person in the employee's position would have felt that

12  [s]he was forced to quit." *Watson v. Nationwide Ins. Co.*, 823 F.2d 360, 361 (9th Cir. 1987)

13  (simplified).  A plaintiff must show "aggravating factors, such as a continuous pattern of

14  discriminatory treatment." *Sanchez v. City of Santa Ana*, 915 F.2d 424, 431 (9th Cir. 1990)

15  (internal quotations omitted).  To allege a constructive discharge claim, a plaintiff must meet a

16  higher standard than a hostile work environment claim. *Brooks v. City of San Mateo*, 229 F.3d

17  917, 930 (9th Cir. 2000).  The conditions must be "sufficiently extraordinary and egregious." *Id.*

18    Nevada law also recognizes a tortious constructive discharge claim and has adopted the

19  same standard as the Ninth Circuit for a federal claim. Nev. Rev. Stat. § 613.330; *Martin v.*

20  *Sears, Roebuck & Co.*, 899 P.2d 551, 553 (Nev. 1995) ("A constructive discharge has been held

21  to exist when an employer creates working conditions so intolerable and discriminatory that a

22  reasonable person in the employee's position would feel compelled to resign.").  Specifically, a

23  tortious constructive discharge claim "exist[s] upon proof that (1) the employee's resignation

was induced by action and conditions that are violative of public policy; (2) a reasonable person in the employee's position at the time of resignation would have also resigned because of the aggravated and intolerable employment actions and conditions; (3) the employer had actual or constructive knowledge of the intolerable actions and conditions and their impact on the employee; and (4) the situation could have been remedied." *Martin*, 899 P.2d at 553.

Construing her complaint liberally, Hukman sufficiently pleads a constructive discharge claim separate and apart from her retaliation claim. Hukman claims that Turner yelled at her, blocked her from using the bathroom, intimidated her, falsely accused her of failing to make money drops, and attempted to poison her such that Hukman needed to call the police. These sufficiently allege that a reasonable person in Hukman's position would feel their employment conditions were intolerable. Hukman also alleges that she complained to Terrible about Turner's harassment and discrimination. ECF No. 1-3 at 11. She seems to allege that Terrible attempted to remedy the situation by directing Turner to not arrive at work until Hukman left, but Turner did not follow that order. *Id.* at 12. Nevada has a public policy against national origin discrimination in the workplace. Nev. Rev. Stat. § 233.010; *see also Sands Regent v. Valgardson*, 777 P.2d 898, 900 (Nev. 1989) (citing NRS § 233.010 as Nevada's public policy against discrimination in employment). Accepting as true all well-pleaded factual allegations and drawing all reasonable inferences from the complaint in Hukman's favor, Hukman has sufficiently pleaded that she was constructively discharged. I therefore dismiss Terrible's motion to dismiss Hukman's eighth cause of action.

/ / / /

/ / / /

/ / / /

9. <u>Interference with Unemployment Benefits (Claim 9)</u>

Hukman's complaint alleges Terrible interfered with her attempts to obtain unemployment benefits.  Terrible argues that an absolute privilege applies to its response to Hukman's quasi-judicial unemployment proceeding.  Terrible also contends that this claim is not properly before me because Hukman's unemployment claim was already litigated.

Hukman responds that Terrible and the state unemployment division discriminated against her because she did not have a fair decision or a fair hearing.  She argues Terrible retaliated against her and made false statements to the unemployment division.  She argues I should either reopen her unemployment case or compensate her for what she is owed.  She argues the unemployment division violated the Unemployment Integrity Act by accepting Terrible's late false statement.  She seems to be challenging the unemployment division's decision and her appeal.

Hukman does not respond to Terrible's argument that its response to her unemployment proceeding was privileged.  I therefore grant Terrible's motion to dismiss Hukman's ninth cause of action. LR 7-2(d).  Hukman may amend her complaint to assert this claim and demonstrate why privilege does not apply, should facts and legal theories exist to do so.

**III. SUMMARY**

The following causes of action remain pending:

(1) National origin discrimination in violation of Title VII based on denied meal and rest breaks and denied promotions in March, September, and October 2019;

(2) Retaliation in violation of Title VII;

(5) Harassment in violation of Title VII;

(6) Denial of 401K payment and Spanish premium pay in violation of Title VII; and

(8) Constructive termination under Title VII and Nevada state law.

Hukman may amend her complaint consistent with this order. The amended complaint must be a complete document in and of itself and will supersede the original complaint in its entirety. Any allegations, parties, or requests for relief from prior papers that are not carried forward in the amended complaint will no longer be before me. Hukman is advised to support each claim with factual allegations because all complaints "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Because Hukman alleges multiple claims, her complaint should identify which factual allegations give rise to each particular claim. She should be aware that Federal Rule of Civil Procedure 8 requires "a short and plain statement of the claim." I also refer Hukman to Local Rule 7-3 regarding page limits for papers filed in this matter. Hukman is instructed to comport with these page limits in the future.

**IV. CONCLUSION**

I THEREFORE ORDER that defendant Terrible Herbst Inc.'s motion to dismiss **(ECF No. 6) is GRANTED IN PART**, as outlined above. Plaintiff Sheida Hukman may file an amended complaint consistent with this order by **April 29, 2022.** If she does not file an amended complaint by that date, this case will proceed on the claims that survived dismissal.

DATED this 30th day of March, 2022.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE